John Sexton, Sheila Sexton v. Deutsche Bank National Trust Company, your first, Mr. Greek. I'm here for Mr. and Mrs. Sexton, who are in the gallery today. We're asking this court to decide whether the four-year statute of limitations applies in this case in a way that would void the August 5, 2014, foreclosure of Mr. and Mrs. Sexton's home. The court will be glad to know that Deutsche Bank and us, we agree on two things. 14, which would have been beyond the four-year statute of limitations. After that, we don't agree much. It's whether they permissively continue to accept payments and thereby did away with the – and did that do away with the acceleration. That's one issue. Did it waive or abandon the January 1, the January 12, 2010 acceleration? That's one of the issues in this case. As far as abandonment or waiver, the defense brought up several – not several. There were two cases, I think, of unpublished opinions that indicated that there was a difference between abandonment and waiver. And they've cited a Mendoza case, which was a 12B6 case, that said the Wells case – I think it's in the papers – said that – quoted Mendoza saying that abandonment and waiver were two different things. I looked in the Mendoza case. I didn't see that in there. Mendoza, the court held – the trial court held it on a 12B6 motion by the defendant to dismiss that they denied the motion and the case went on from there. But there was no statement I saw that said waiver and abandonment are two different things. The vast majority opinion on waiver and abandonment is that waiver – or that abandonment is characterized or framed by the traditional elements of waiver. There are three elements. Basically, there's a right that a person has. They are knowledgeable about the right. They know about it. And they either intentionally give it up, relinquish it, or by conduct inconsistent with the right, they waive it. Which intentional relinquishment of a known right is abandonment. Yes. I mean, it's waiver. But it could be – abandonment could be more like forfeiture in our context, where you fail to assert something so you lose the privilege, perhaps. But I don't know that it matters, does it? Well, I'm going to get to that. In the mortgage context, it's said over and over again that abandonment and foreclosure – I mean, abandonment and waiver are almost the mirror image of each other as far as the foreclosure context. And you can look on some of the cases that say this. The Leonard case, the Boren case, make those statements that abandonment and waiver are essentially the same thing. Now, whether – one of the issues, as the court correctly pointed out, is whether or not accepting or asking for payments less than the accelerated amount, does that abandon or waive the previous acceleration? Well, one thing I wanted the court to look at was first the forbearance clause, forbearance by the lender – and this is in the deed of trust or the security agreement. This is a home equity loan. The security agreement, which is just another name for the deed of trust. The forbearance by the lender in exercising any right or remedy, including accepting payments in amounts less than the amount due, shall not be a waiver of any right or remedy. That was the agreement that Mr. and Mrs. Sexton had with Deutsche Bank, with the appellee. Of course, that is arguably – and, of course, they make this argument – different from acceleration, where instead of following through in foreclosing, you offer to let them come in and pay less and continue with the property, not foreclosing on the home equity loan. But this clause, I believe, says that even if they accept payments, they don't waive a previous – a right they have, which would be the right to accelerate. I think we're talking about two different things, but that's your argument. One thing – I sent this last week to the court, this Shields case. It's a Texas Supreme Court case that came out in May of last year that deals with waiver and whether or not waiver – that you can waive a non-waiver clause is basically what they were considering. This was in a lease, but I think it's instructive for us to see the language they used about why they're saying this. They say – this is on page 471 of the Shields case. It says, disposition of this matter, this case, ultimately turns on the force and effect of the party's non-waiver agreement, which unequivocally provides a defense of waiver premised on the landlord's acceptance of late rental payments. We note – and this is, I think, we can agree with. I'm sorry. What page is that? Because 471 is the – the opinion starts on 473. Let's see. It's 478. Thank you. It's what I have. It says – it goes on to say, and I think this is what we can agree with, we note our appellate courts have treated non-waiver provisions inconsistently. We may therefore exercise jurisdiction over this appeal despite its origin because an opinion of this court addressing the matter would remove unnecessary uncertainty in the law and unfairness to litigants. So in this case, the lease says that the landlord, by accepting payments late or less than a total amount, would not be a waiver of his right to get possession of the premises if – even if he accepted these payments. So there was a non-waiver clause, and the language of the non-waiver clause in the Shields case – one of the reasons I sent it was it's so similar to the non-waiver clause we have in our – in the Sexton case in their security agreement where it says they can accept payments less than the accelerated amount and still not waive their rights. So the question goes back to was the acceleration on January 12, 2010, was it waived? So basically do you want us to find a fact issue on the point? Pardon? Do you want us to find a fact issue on the point? Yes. Is that what you want from us today? I think we would like first to have the case rendered in our favor on the basis of the non-waiver clause or reversed and remanded to the trial court to consider the issue of was the January 12, 2010, acceleration – was it waived? This is always odd because the people who have the property – who are living in the property, they always want the payments to be accepted and for the acceleration to go away. Until – but then at the back end you want to say that the acceleration didn't go away because you want to argue limitations. This is over and over again. But really if you had asked them on the first day, they would have said, please, we hope the acceleration has gone away. So they're arguing something different because it's an advantage later on than what they would have wanted and thought at the time. Can you help me with that? One might wonder why a mortgage company or a servicing company doesn't just say we're going to work with you on a loan modification. We're going to waive the previous acceleration. Why don't they do that? My belief is they don't do it because they want the sword of Damocles above the head of the homeowner so that he's pressured to make payments, to participate, to try to get up to date. Because they could easily – and the legislature recognized this and passed a rule in the Civil Practice and Remedies Code that says if a mortgage company wants to waive an acceleration, they could do it by telling the homeowner they waived the acceleration just by a simple writing. So the question here is does the offering to accept payments less than the accelerated amount, does that waive the previous acceleration? And as I say, I think this case, the Shields case, answers that question. How does – how come Boren doesn't control the Boren case, the Fifth Circuit 2015 case? Well, I think we don't have to have an eerie guess on this case because here's the Supreme Court of Texas coming down saying what the law of non-waiver is. So you believe that there's an interceding Texas – Supreme Court of Texas case that should cause us to reflect again on what we decided in Boren? Yes. That's – We don't have to have an eerie guess. So do you need us to decide that Boren is wrong for you to win? I would say – I think Boren has some good stuff in it that I think is instructive, but I think their ultimate holding is wrong, yes. So you're saying Shields trumps Boren? Yes. Even though Shields is a lease and Boren is a mortgage? Yes. Well, that's a stretch. It's all about – That's a stretch. And as the court says, we're trying to clear this up, this misunderstanding or this confusion, what they call it. We note our appellate courts have treated non-waiver provisions inconsistently. And if you look at them, they are inconsistent. Whether or not there's accepting payments less than the accelerated amount, there are cases that say that doesn't waive the acceleration. The Boren case and Leonard and the cases cited by Deutsche Bank, they do say that making offers of payment and accepting payments less than the accelerated amount, that that does waive the acceleration. So we're asking the court to look at this and to clear this up. We had made a request for a certified question to the Texas Supreme Court, but I believe – I know the court said this is a stretch, but I believe this answers the question as to whether or not there's a waiver, whether or not – What answers the question? Pardon? What answers the question? That this Shields case answers the question of whether or not a non-waiver clause does keep the party with the right from waiving that right. They don't – just because they accept payments for less than the amount or late payments, as in the Shields case, that that does not trump the non-waiver clause. And that's our position. May it please the Court. My name is Tom Luce. I represent the lender, Deutsche Bank, in this appeal. Has anybody ever told you not to be loose with the facts, Mr. Luce? I get that every day at work, Your Honor. I'm sure you do. There are two issues that I want to talk to the court about. How about addressing Shields right up front? Shields doesn't have anything to do with this case. The issue in Shields was, one, the enforceability of a non-waiver clause in an agreement, and, two, whether a party can waive a non-waiver agreement. Isn't that an issue in this case? No, Your Honor, it's not. Why not? The Sextons certainly don't argue that the parties have waived the non-waiver clause, and the bank doesn't argue that the non-waiver clause has been waived either. And the bank doesn't need to argue that the non-waiver clause has been waived because that clause does not address the abandonment of a past acceleration. But they're arguing that the presence of the non-waiver clause bodes ill for your argument that it was waived. Well, one can agree that a non-waiver clause is an enforceable provision in a contract and recognize that it doesn't apply to the situation at hand. This Court in Justice answered the question, what is the effect of a non-waiver clause on the abandonment of a past acceleration? Do you think that because one is in the lease context and one is in the mortgage context that that's why Shields doesn't apply? Because it does seem that the language of Shields said we've got all these problems and I took it to be all these problems includes in this very common context as well. I haven't considered whether the lease versus mortgage, I don't think that does make a difference, Your Honor. Okay, so you're not saying that because it's about one's rental of a property and one's purchase, that's not why you distinguish Shields? I think the holding is broader than that, Your Honor. Okay. In Shields, a lease wouldn't have an acceleration clause, would it? I don't know this precise lease in Shields. Well, you make a good point, Your Honor. It did have certain conditions that you could do about whether you could accept rent late or early and it had timing. It had timing of the payments and amounts of the payments, so it's analogous in that way. The critical facts in Shields were that the landlord consistently accepted late rent. Late rent. And that was the express part of the non-waiver clause. It said by accepting late rental payments, I'm not waiving my right to enforce. Why isn't that analogous here, that by accepting these late, lesser payments, whether it was waived, why isn't that some argument that it didn't waive? I think abandonment of a past acceleration is a different question than the question of a waiver of a right to enforce rights and remedies in the future. And that's the distinction that this court pointed out in the justice decision. In that case, the court, and Judge Barksdale, I think you hit on this directly, the court said there were two distinct issues at stake in that case. One was abandonment of an existing acceleration, and the second one was the waiver of defendant's right to accelerate in the future. Now, we're not bound by that case, are we? That's a non-published opinion, but it is persuasive authority on this point. And it is consistent with decisions in the Wells opinion and the Mendoza opinion. Both of those are district court cases. And I'll point out, and I sent a 28-J letter to the court last week, there's a decision from about a month ago, Bracken v. Wells Fargo, in which the Dallas Court of Appeals was faced with precisely the same argument from the same attorneys. And the Dallas Court of Appeals in Bracken said that the analysis of this court in justice was correct. And so you have an indication from the State Intermediate Court of Appeals that this court is correctly applying Texas law. In the justice case, the court said the non-waiver clause applies only to the question of a lender's right to accelerate or to enforce other rights and remedies in the future. It does not address the abandonment of an existing acceleration. And one way that I have thought about this is that the non-waiver clause is forward-looking. It talks about non-waiver of the exercise of rights or remedies. When you talk about the exercise, you're implying something that needs to be done in the future, not addressing whether or not a past acceleration can be abandoned. Why isn't there a fact issue? Because the RPAs say that they have the right to proceed with foreclosure. They keep reminding of the foreclosure, and if it's been abandoned, that wouldn't be appropriate. I think a couple of things, Your Honor. One, this court in its Boren decision and in other decisions, and there are Texas authorities on this point as well, say that while waiver or abandonment is ordinarily a question of fact, where the facts are not disputed, it is a question of law. Here, the facts are not disputed. The terms of the RPAs, the terms of the subsequent notices of default, the terms of the subsequent monthly invoices, all of that's in the record. The Sextons have admitted to the receipt of all of those documents. Right, but I'm saying the documents themselves on their face have some weird thing. They have some parts of them that are inconsistent with the position that they've been abandoned. I don't think those are inconsistent, Your Honor. And you mentioned in the RPAs there's a provision that says if Sexton doesn't comply with the payment terms of the repayment plan agreement, then he would be in default and that the lender would not be required to give an additional notice of default. No, it says records indicate that your loan is in foreclosure. In foreclosure is different. I think you're talking about one of the monthly. A monthly statement, and then the other said that you would have the right to proceed with the foreclosure. It doesn't mean a new foreclosure. It means the foreclosure action that's already been disclosed. Let me be clear about which ones I'm talking about. On the monthly invoices, it does say your loan may be in foreclosure, and this may be. No, it doesn't say maybe. It says indicate that your loan is in foreclosure. You're correct. And it may be for informational purposes. Nonetheless, each of the invoices only requested payment of less than the full amount, the full accelerated amount of the debt. But isn't that ambiguous on its face? I agree that there is definitely evidence in the record that the bank was intending to abandon. But my question is, on the face of the same monthly statements, is there some evidence by saying it is in foreclosure, evidence to the contrary, such that your own statements themselves are what are creating the fact issue? I don't think that creates a fact issue because each of those statements only requests less than the full accelerated amount. So we should just ignore the part that says that they're in foreclosure? I don't think that's inconsistent with an abandonment of acceleration. Well, you're not in foreclosure if you abandonment, aren't you? You're not technically in foreclosure if acceleration has been abandoned. I don't know that it's entirely clear what in foreclosure means in that context, but a request for payment of less than the fully accelerated amount due is very clear from that. Well, I agree that that is consistent with abandonment, absolutely. But in foreclosure is consistent with acceleration. Well, turn to the notices of default. That was the dispositive issue in this Court's Boren decision. There were half a dozen notices of default sent after the acceleration that the sextons rely on. Each of those notices of default say here's the amount needed to cure this, an amount less than the fully accelerated amount of the debt. Each of those notices of default also say if you don't cure the default, then we will accelerate. Each of those demands less than the fully accelerated amount of the debt due. Each of them says we will accelerate if you don't cure, meaning it's not accelerated at this point, but it might be accelerated in the future. And the Court in Boren said, after accelerating the debt, a request for payment of less than the full obligation is an unequivocal expression of the bank's intent to abandon or waive its initial acceleration. Under Boren, the notices of default alone would have abandoned acceleration, and those began to be issued in 2010, through 2010, and all of those are within four years of the date of the initial acceleration. Under Boren, the question whether the lender in this case abandoned acceleration is settled, there's no question that those notices of default, even considered without any of the other documents, would have abandoned acceleration. The facts here are not distinguishable from Boren as far as the notices of default are concerned. This Court repeatedly has followed Boren, and as illustrated in the two cases that were the subject of my 28-J letter, both the NSL case in Fort Worth and the Bracken case in the Dallas Court of Appeals, both of them applied Boren and found an abandonment of acceleration on facts that are not distinguishable from the facts here. I don't remember the other cases having that other language in the statements sent to the people. I don't recall. I don't believe any discussion was made of that or anything of the sort. I don't recall if those cases involved monthly statements that had language like that. Yeah, I think this is a new issue, so that's the problem. Well, the monthly statements also were sent from November 2011 to November 2013, if I recall correctly. All of them are in the record. The subsequent notices of default were sent in April, May, August, September, and November of 2010. All of those would have been sent long before any of those monthly statements would have been sent. All of those independently were sufficient, or each of them independently was sufficient to abandon acceleration when they were sent. Each of them say you can cure your default by paying less than the full accelerated amount of the debt, and each of them say we will accelerate if you don't cure your default. That, under Boren, is abandonment of acceleration as a matter of law. The repayment plan agreements also provide a payment of less than the fully accelerated amount of the debt. Each of them also shows an abandonment as a matter of law. I want to turn now to the non-waiver clause that the Sexton's rely on. As I mentioned, this court in justice addressed a non-waiver clause. There is an implication in the Sexton's reply brief that the non-waiver provision here was different than the non-waiver provision addressed in justice. That's not correct. Both of those non-waiver provisions are identical, and the justice court made clear those clauses address a defendant's ability to accelerate in the future. They do not address the abandonment of an acceleration in the past. Once again, the Bracken case from the Dallas Court of Appeals addressed an identical non-waiver provision and followed this court's guidance in justice. One of the things you see in the Sexton's brief is a phrase that non-waiver provisions create a, quote, presumption against abandonment. That's not correct. There's no case that has held that. There's a case called Page that says that a non-waiver provision creates a presumption against a waiver of the right to foreclose in the future. And that is the context in which, up until now, the non-waiver clauses have been litigated in these kinds of cases. There have been arguments that forbearance in the past would actually waive a right to foreclose in the future. This court has uniformly rejected those arguments on the basis, among other things, of the non-waiver clauses. I'm troubled, and perhaps you can help me. It seems that, as the plaintiffs argue, that if we rule this way, that it allows the banks to— if you could come up here and make the opposite argument and tell us there was some reason that you wanted the acceleration to not have been abandoned in some other lawsuit for some particular reason, because you could then argue, well, we have an anti-waiver provision, and S.H.I.E.L.D. says you should be very strict on that. And yes, we did do a lower amount in these notices we sent, but we also said that the foreclosure was ongoing in the bottom of these monthly statements, and so they shouldn't have relied upon that. They should have known that it was still ongoing. I could just hear you being able to make the exact opposite argument based upon the same record, and that's troubling at some length because it seems to give one side kind of unilateral authority to say what the effect of the facts is. I don't know that I would be able to make that argument, Your Honor. I think that each of those requests or demands for less than the full payment under this Court's holding in Boren constitutes an abandonment as a matter of law, and I don't think— At that very moment, regardless of the anti-waiver provision. Well, I think it's also important in this case to look at the timing of those different statements. The notices of default were sent in 2010. The monthly statements were sent a year later. And so the question whether or not those notices of default abandoned acceleration at that time, I think, is a settled question under Boren. Why are they sending these notices a year later that are incorrect? It's just kind of— I'm going to have to speculate on that, Your Honor, but my understanding is that there may be regulatory requirements for lenders or servicers to send monthly statements. That's my understanding. But they're wrong. They have incorrect information on them. That it was in foreclosure. They say that the thing is in foreclosure, and it's not. Well, look at that from the other perspective, though, Your Honor. Supposing the sextons receive one of those monthly statements and say, Well, I just came into some money. I'll pay this amount due and cure this problem. Do you think a lender would be on solid ground to say, Well, that was for informational purposes only. We're not going to accept this and reinstate your loan? I don't think that would ever be supportable. Lenders want to be repaid the loans that they make. We don't want to foreclose on people. We don't want to be owners of this real estate. We lend money, and we want to be paid back with the interest that the parties agreed to. None of that is what we want. If they want to reinstate the debt, we're happy to have them do that. That's the opposite, though. And the policy that I think the sextons advocate is the exact opposite policy that the borrowers ought to be advocating. In these circumstances, it is in the borrower's interest to have liberal rules to allow lenders to try and negotiate and give them some kind of modification or other assistance to help them bring their debt current. And the position that they're advocating on the non-waiver clause, and this is made clear from the Mendoza opinion, is just the opposite of that. If lenders are not free to be able to negotiate with borrowers without the risk of waiving rights or without the risk of having their loans barred by limitations, then the incentive in that case is simply to go to foreclosure instead of trying to work things out. Mr. Varicki did start with a discussion, and there is a statement in the district court's opinion, to the effect that abandonment of acceleration is different than waiver of acceleration. And I don't have that language quite right, but I'm paraphrasing. And I want to clear that up. The district court cited to a decision called Wells v. Bank of America. Wells v. Bank of America, in turn, paraphrased from a decision called Mendoza.  But what the Mendoza case said, and this is their 2015 opinion, abandonment of a prior acceleration and waiver of a future acceleration are different issues. In the Wells decision, the Wells district court decision, what the paraphrase was was abandonment of acceleration and waiver of acceleration are different issues. That paraphrase doesn't make the point very clearly. But the underlying point is correct, which is abandonment of something in the past is not the same issue as a waiver of a future acceleration. And that's the point that this court made in the justice opinion. And so I think the Saxons are trying to capitalize on both a poor paraphrase in the Wells decision and the second thing that happened in Wells is there are two Mendoza decisions, one in 2014 and one in 2015. The 2015 decision is the one that says abandonment of a prior acceleration is different than waiver of the right to accelerate in the future. Unfortunately, in Wells, the court miscited the 2014 opinion. And so there is a miscitation and a poor paraphrase, but the underlying point remains solid. My time is about up, but I think that the court's decisions in Boren and Justice are dispositive of the two issues that the Saxons raise in this case. And Deutsche Bank requests that the court affirm the district court's judgment in all respects. If you don't have any more questions, I'll sit down. Thank you, sir. Thank you, Your Honor. Mr. Bereke? Yes, Your Honor. Let me answer a few things that came up here. Mr. Luce said in his letter that he wrote to the court last week that talking about Boren and he said regarding the irrelevance of the non-waiver clause on abandonment of acceleration in justice, in the justice case, the irrelevance of the non-waiver clause. In Shields, on page 471, they talk about the reason for the non-waiver clause and the power of the non-waiver clause. And it says this, given Texas' strong public policy favoring freedom of contract, there can be no doubt that as a general proposition, non-waiver provisions are binding and enforceable. It doesn't say in the lease context. It doesn't say in the mortgage context. It says the Supreme Court of Texas is saying the non-waiver provisions are binding and enforceable. They're not irrelevant, as Mr. Luce had indicated. What do you say to his point that you're trying to win the battle and lose the war? If you can't go around them ever and they're so solid, as you say, that's really bad for people who want to make lower payments, isn't it? Well, the mortgage company, if they really do what Mr. Luce was saying and they don't want to foreclose, I disagree with that in a lot of contexts. When they see a large chunk of equity there, they're a lot harder to deal with than if there's not a large chunk of equity there. All they would have to do is write a letter, just like the legislature said where they were trying to help the mortgage company, just write a letter saying you abandoned the previous acceleration. That's all they had to do. And then we're not even in this debate. But as I said, I think they want to keep the pressure on the homeowner. And, yeah, I mean, that's a good point. But, you know, my clients here I believe were wrongfully foreclosed upon, and it comes from that acceleration on January 12, 2010. If you look at, and I think the court pointed out some things, if you look at the, this is on page 241 of the record on appeal, this is the repayment plan dated 7-30-2010. And does this sound like the previous acceleration has been abandoned? If a payment is not received by the planned due date, the loan will be deemed to be in material default of the agreement, and Litton, who was the servicer at the time, will have the right to proceed with foreclosure action. Litton is not required to give any notice of default. The only way they could say that is if there had been an acceleration, because you have to do an acceleration to be able to not have to give notice of default and to proceed ahead with foreclosure. There has to be an acceleration. So at that point they hadn't waived it. And then if you look at all of these different, the Deutsche Bank lists, all these different notices of payment in their summary judgment brief that go on and on, and if you look at them, let's just look at a couple, it says, just as the court pointed out, our records indicate that you are in foreclosure. So if you look at each one of them, there is a sentence like that in those notices. So they haven't abandoned acceleration. Another thing, there is a statement in the cases that I think addresses this. This is in the Leonard case on page 677, Martinez on page 3, citing Kahn on 353, and Holy Cross v. Wolf on 566. Here's the statement. When a note holder abandons acceleration, it restores the note to its original terms with its original maturity date. Has the court seen anything in any of the defense documents where the note was returned to its original terms and its original maturity date? No, because they haven't abandoned acceleration. My time's up. Thank you. I appreciate the time. Yes, sir. Okay, that concludes the case.